C/m

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
ALL STAR CARTS AND VEHICLES,
INC., H.B. MILLWORK, INC., and
ELECTRONICS COMPANY, INC., on
behalf of themselves and all others similarly
situated,

                                                                          MEMORANDUM AND ORDER

                   Plaintiffs,                            CV 08-1816

    -against-                                   (Wexler, J.)

BFI CANADA INCOME FUND, IESI
CORP., IESI NY CORP., WINTERS BROS.
RECYCLING CORP., WINTERS BROS
WASTE SYSTEMS, INC., WASTE
MANAGEMENT OF NEW YORK, LLC.
ALLIED WASTE INDUSTRIES, INC.,
ALLIED WASTE OF LONG ISLAND, INC.
and ISLAND WASTE SERVICES, LTD.

                   Defendants.
----------------------------------------------------------X
APPEARANCES:

        LEWIS JOHS AVALLONE AVILES, LLP
        BY: JAMES F. MURPHY, ESQ.
        Attorneys for Plaintiffs
        425 Broad Hollow Road, Suite 400
        Melville, New York 11747

        REESE RICHMAN LLP
        BY: MICHAEL R. REESE, ESQ.
            KIM E. RICHMAN, ESQ.
        Attorneys for Plaintiffs
        875 Avenue of the Americas, 18th Floor
        New York, New York 10001

GREENBERG TRAURIG, LLP
BY: JAMES I. SEROTA, ESQ.
    RONALD LEFTON, ESQ.
    DANIEL J. BUZZETTA, ESQ.
Attorneys for Defendants
200 Park Avenue
New York, New York 10166

WEXLER, District Judge:

This is an antitrust action alleging a conspiracy to restrain trade, and an attempt to monopolize in violation of Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1, 2. Presently before the court is the motion of certain defendants to dismiss for lack of personal jurisdiction, as well as the motion of all defendants to dismiss for failure to state a claim.

## BACKGROUND

### I. Factual Allegations of the Complaint

In light of the fact that this case is before the court as a motion to dismiss, the court accepts as true the facts set forth in Plaintiffs' First Amended Class Action Complaint (the "Complaint").

#### A. The Relevant Markets

Prior to identifying the parties, the court will outline the allegations concerning the relevant business market, and the relevant geographic market alleged. The relevant business market described in the Complaint is the market for "small containerized waste hauling and disposal services." As alleged here, that market encompasses the lifting of small containers of waste for emptying into the storage section of a vehicle which then transports the waste to a disposal site. Such services are described as provided primarily to commercial customers including restaurants, apartment complexes and stores. These customers generate more waste

than residences, but less than larger entities that would typically utilize "roll-off" containers. Roll-off containers are transported to disposal sites, and returned to the customer. In contrast, the market here provides the service of transporting waste from small containers that remain on the customers' premises. Plaintiffs assert that there is no practical substitute for small containerized waste hauling. Therefore, customers of this service will not generally switch to a different type of waste disposal service, such as curbside pick-up, or roll-off containers, in the event of a price raise. The relevant geographic market in which defendants are alleged to operate is the Long Island, New York Area.

B. The Parties

Plaintiffs allege to be members of a class consisting of all persons and entities that have contracted with, and purchased small containerized waste disposal services in the relevant market directly from defendants (the "Plaintiff Class"). The relevant time period alleged covers May 5, 2004, through the present.

Defendants and their places of incorporation and executive offices are alleged as follows:

- BFI Canada Income Fund ("BFI"): Canadian business income trust with its principle offices in Toronto.

- EISI, Corp. ("EISI"): Delaware corporation with its principle offices in Houston Texas.

- EISI NY: Delaware corporation with its principle offices in Bayonne, New Jersey.

- Winters Bros Recycling and Winters Bros. Waste Systems, Inc.: New York corporations with their principle executive offices in Westbury, New York (collectively "Winters Brothers").

- Waste Management of New York, LLC ("Waste Management"): Delaware corporation with its principle offices in Houston, Texas.

3

- Allied Waste Industries, Inc. ("Allied"): Delaware corporation with its principle offices in Phoenix, Arizona.

- Collectively ("Defendants").

Plaintiffs' Complaint details the corporate relationships among Defendants as follows. At the head of the alleged corporate structure is Defendant BFI, which is described as one of the largest business income trusts in the North American capital markets. BFI is also alleged to be one of the largest non-hazardous solid waste management companies in North America, with 2007 revenues of approximately $1 billion. Plaintiffs state that BFI conducts business in the relevant market described above directly, and through its wholly owned and dominated subsidiaries in North America (certain of which are named Defendants), including those located in the United States and within this district.

The Complaint alleges that Defendants IESI, IESI NY, and Winters Brothers are all wholly owned and dominated subsidiaries of BFI that are engaged in the provision of non-hazardous solid waste management services in the United States, and in this district. Waste Management and Allied are described as being "presently or formerly" engaged in the business of the relevant market. The Complaint alleges that in or about 2006, Waste Management and Allied sold certain assets, including transfer stations, and contracts for the disposal of solid waste within the relevant geographic market, to Winters Brothers. As a result of this transaction, Winters Brothers is alleged to have tripled in size, and increased its market power. In August of 2007, Winters Brothers was acquired by BFI. Upon this acquisition, BFI is alleged to have announced to its shareholders that Winters Brothers had approximately 13,000 commercial customers, and that more than 80% of these customers were parties to long term contracts with

Winter Brothers that were typically seven years in length.

### C. The Alleged Anti-Competitive Contracts

At the core of Plaintiffs' antitrust complaint are certain contractual provisions binding customers, including members of the Plaintiff Class, who purchase small containerized hauling and waste disposal services from the Defendants. The specific allegedly anti-competitive provisions are contractual terms of three years or more, and in many cases seven to ten years, along with automatic renewal provisions. These renewal provisions extend the contracts for same period of time as the original term, and require customers to give notice of termination at least ninety days prior to the end of a term. Also identified as anti-competitive are liquidated damages provisions, and those that require customers to give notice to Defendants of any offer by another solid waste hauling company. These "right to compete" clauses require customers to give Defendants a reasonable opportunity to respond to the competitor's offer.

Defendants' use of these clauses, in the context of their large market share, and market power in the relevant market is alleged to have had anti-competitive and exclusionary effects. These effects are described as significantly increasing barriers to entry facing new entrants to the relevant market, and barriers to expansion faced by incumbent competitors. Defendants' market power is alleged to be maintained, and enhanced by their use and enforcement of these contracts. As a result of enforcement of the allegedly anti-competitive clauses, Plaintiffs allege a conspiracy to restrain trade in violation of Section 1 of the Sherman Act, and a dangerous probability that Defendants "will achieve monopoly power in the Relevant Market in violation of Section 2 of the Sherman Act."

In support of the allegation that the contractual clauses at issue violate the Sherman Act,

5

Plaintiffs allege that the Defendants' conduct here is no different from conduct specifically identified by the United States Department of Justice ("DOJ") as anti-competitive, and in violation of Section 2 of the Sherman Act. Plaintiffs cite to a 1996 DOJ complaint in a separate matter, that did not involve the entities named as Defendants here. That matter, however, did involve contractual provisions similar to those at issue in this lawsuit. The contracts at issue in the DOJ complaint were enforced by waste management companies engaged in businesses similar to that alleged as the relevant market here. In the DOJ case, which ended in settlement, the government alleged that contracts containing provisions similar to those described in the Complaint (including long terms, provisions for automatic renewal, and right to compete clauses) were anti-competitive barriers to entry that led to the possibility that defendants therein would achieve monopoly power. See United States v. Waste Management of Georgia, et al., http://www.usdoj.gov/atr/cases/f0500/0535.htm. As noted, the DOJ case alleging this anti-competitive behavior ended in settlement. Thus, there was neither a judicial finding of conduct in violation of the antitrust laws, nor any admission of liability.

II.     The Complaint: Causes of Action Alleged

Plaintiffs allege violations of Sections 1 and 2 of the Sherman Act. Plaintiffs' first claim alleges a conspiracy to restrain trade in violation of Section 1 of the Sherman Act ("Section 1"). Specifically, it is alleged that Defendants conspired to restrain trade by locking in customers through the use of contracts, and horizontal agreements containing illegal and anti-competitive provisions. These acts are alleged to have restrained competition, and injured the Plaintiff Class by resulting in the payment of higher prices for small containerized waste hauling services. Defendants' conduct is alleged to constitute both a per se, and rule of reason violation of Section

1.

Plaintiffs' second claim sets forth a willful attempt to monopolize in violation of Section 2 of the Sherman Act ("Section 2"). This claim alleges that Defendants possess, or are attempting to possess monopoly power in the relevant market. Defendants are further alleged to have conspired to unlawfully monopolize the relevant market. Plaintiffs set forth injury in the form of higher prices, reduced competition, innovation, and consumer choice.

III. Allegations of Conspiracy

Plaintiffs allege that Defendants engaged in a conspiracy beginning no later than May 5, 2004, and continuing to the present. The conspiracy is alleged to consist of "a continuing agreement, understanding and concert of action among the Defendants, the substantial terms of which are to intentionally suppress, restrain and eliminate competition" in the relevant market.

As to particular allegations, Plaintiffs allege, in general terms, that Defendants participated in meetings, conversations and communications to discuss charges to be assessed for their services. Defendants are alleged to have reached agreement during these meetings as to charges. They are further alleged to have agreed, during the aforesaid meetings, to engage in predatory pricing to induce customers to contracts containing the allegedly illegal provisions referred to above. Finally, Defendants are alleged to have used those contracts to restrain trade and attempt to monopolize.

IV. The Motions to Dismiss

As noted, there are two motions to dismiss that are presently before the court. Defendants BFI, IESI and IESI NY move to dismiss for lack of personal jurisdiction. All Defendants move to dismiss for failure to state a claim. After outlining relevant legal principles, the court will turn to

the merits of the motions.

## DISCUSSION

I. The Motion of BFI, IESI and IESI NY to Dismiss for Lack of Jurisdiction

Defendants BFI, IESI and IESI NY (collectively the "Foreign Defendants") move to dismiss for lack of personal jurisdiction. As noted, BFI is alleged in the complaint to be a Canadian income trust.[1] IESI is a Delaware corporation with its main offices in Texas, and IESI NY is a Delaware corporation with its executive offices in New Jersey.

A. General Legal Principles

Plaintiffs bear the burden of establishing jurisdiction over each of the Defendants. See Whitaker v. Am. Telecasting, Inc., 261 F.3d 196, 208 (2d Cir. 2001); In re Tamoxifen Citrate Antitrust Litigation, 262 F. Supp.2d 17, 21 (E.D.N.Y. 2003). A plaintiff may defeat a pre-discovery motion to dismiss for lack of personal jurisdiction by relying on information in the complaint, as well as supporting documentation. Ball v. Metallurgie Hoboken-Overpelt, S.A., 902 F.2d 194, 197 (2d Cir.1990); see Whitaker, 261 F.3d at 208. In the event that defendant comes forward with "highly specific, testimonial evidence regarding a fact essential to jurisdiction and plaintiffs do not counter that evidence, the allegation may be deemed refuted. Medpay Sys., Inc. v. Medpay USA, LLC, 2007 WL 1100796 *4 (E.D.N.Y. 2007), quoting, Schenker v. Assicurazioni Generali S.p.A., Consol., 2002 WL 1560788, at *2 (S.D.N.Y. July 15, 2002). Nevertheless, the court must assume the truth of Plaintiffs' allegations, and open

---

[1] Plaintiffs state that BFI is no longer an "income trust," but is now a corporation. The exact corporate structure of BFI is not determinative of the motion to dismiss. It is the facts alleged regarding the operation of BFI, and not its corporate structure, that are important.

8

questions of fact must be decided in favor of the non-moving party. A.I. Trade Fin., Inc. v. Petra Bank, 989 F.2d 76, 79-80 (2d Cir.1993); Merck Eprova AGH v. Gnosis S.p.A., 2008 WL 5336587*1 n.1. (S.D.N.Y. 2008).

Although Plaintiffs allege causes of action under the Sherman Act, the private right of action to pursue antitrust claims is provided by the Clayton Act. Port Dock & Stone Corp. v. Oldcastle Northeast, Inc., 507 F.3d 117, 121 (2d Cir.2007); see 15 U.S.C. §15. The Clayton Act's jurisdictional provision states that an antitrust action may be brought against a corporate entity in any jurisdiction where it is an "inhabitant," or "any district wherein it may be found or transacts business." 15 U.S.C. § 22. "Transacting business," the broadest of the aforementioned jurisdictional requisites, refers to the "practical, everyday business or commercial concept of doing or carrying on business of any substantial character . . . ." Daniel v. American Bd. of Emergency Medicine, 428 F.3d 408, 428-29 (2d Cir 2005), quoting, United Sates v. Scophony Corp., 333 U.S. 795, 807 (1948). "Criteria such as 'mere solicitation' or 'solicitation plus' are not determinative of the jurisdictional question." Banana Distribs., Inc. v. United Fruit Co., 269 F.2d 790, 794 (2d Cir. 1959), quoting Scophony, 333 U.S. at 807. The propriety of jurisdiction turns on the nature of the corporate defendant's business. Id. A parent-subsidiary relationship may form a basis for the exercise of Clayton Act jurisdiction. See, e.g., Scophony, 333 U.S. at 808; Waldron v. British Petroleum Co., 149 F. Supp. 830, 832 (S.D.N.Y. 1957). The exercise of such jurisdiction is simply that, and is not equivalent to piercing the corporate veil for the purpose of imposing liability on the parent entity. Accord Tamoxifen, 262 F. Supp.2d at 24-25.

B.  Jurisdictional Allegations of the Complaint

In support of the exercise of personal jurisdiction over the Foreign Defendants, Plaintiffs

allege that BFI "conducts it business both directly and through wholly-owned and dominated subsidiaries in the United States and within [the Eastern District of New York]." BFI and its subsidiaries are alleged to have engaged in the business of the relevant product and geographic markets set forth in the Complaint. IESI and IESI NY are alleged to be "wholly owned and dominated" BFI subsidiaries that are also engaged in the business of the relevant product and geographic markets. The jurisdictional allegations set forth in the Complaint are thus limited to the argument that by virtue of their corporate relationships, the Foreign Defendants are transacting business in the Eastern District of New York sufficient to support Clayton Act jurisdiction.

In support of the motion to dismiss, the Foreign Defendants argue that BFI is a Canadian Income Trust that does nothing more than invest its funds. It states that its corporate documents prohibit BFI from carrying on any operational business activities. IESI, a holding company that states it conducts no direct business operations is, through separate corporate relationships, ultimately a wholly-owned subsidiary of BFI. Neither BFI nor IESI are authorized to do business in New York. IESI NY is a wholly owned subsidiary of IESI.

Both BFI and IESI state that they adhere strictly to corporate formalities, and do not manage the day to day operations of any business of their subsidiaries. Although IESI NY states that it is engaged in the business of solid waste hauling and disposal, it states that it conducts no such business in New York State. The Foreign Defendants have submitted declarations stating that neither BFI nor IESI: (1) own any property in New York; (2) maintain a local office in New York; (3) have local telephone numbers; (4) employ individuals in New York; (5) solicit any business in New York; (6) export products to New York; (7) have bank accounts in New York or

10

(8) have agents for service of process in New York. Taking these facts together, the Foreign Defendants argue that Plaintiffs can prove no more than a corporate relationship among the Foreign Defendants and the remaining Defendants, and that such relationship is insufficient to confer personal jurisdiction pursuant to the Clayton Act.

In response to the motion, Plaintiffs set forth additional facts in support of the exercise of jurisdiction over the Foreign Defendants. Specifically, Plaintiffs state the BFI and IESI are not merely passive parent companies, but are directly involved in the business operations of Winters Brothers, their local subsidiary. Plaintiffs note that the Winters Brothers' board of directors is comprised entirely of three senior executives of BFI and IESI. Plaintiffs also rely on corporate documents and presentations concerning the acquisition of Winters Brothers by BFI, through IESI. Specifically, Plaintiffs refer to statements made by BFI wherein it stated that it has "pursued the goal of building a nationwide waste system through the means of acquiring existing businesses." Additionally, in a presentation to investors, BFI and IESI are stated to have told investors of its desire to expand its presence in the northeastern United States. BFI's annual report refers to the company as a "market leader in the Canadian and U.S. communities" that it serves. The acquisition of Winters Brothers is referred to in the BFI Annual Report as giving BFI a "strategic foothold" in the northeastern United States market, and touts the advantage of acquiring companies like Winters Brothers that have customers with long term contracts.

C. <u>Disposition of the Personal Jurisdiction Motion</u>

Plaintiffs make little effort to support the Complaint's allegation of personal jurisdiction over IESI NY. This is not surprising given the facts that: (1) IESI NY is nothing more than a subsidiary of IESI and (2) Plaintiffs fail to contradict IESI NY's stated position that it does no

11

business in the relevant geographic market. In light of the foregoing, the Court dismisses the Complaint as against IESI NY, and turns to consider the sufficiency of the allegations as to the remaining Foreign Defendants, BFI and IESI.

As to BFI and IESI, the court holds that Plaintiffs have alleged facts sufficient, at this stage of the proceedings, to support personal jurisdiction over these defendants. As noted, the scope of personal jurisdiction under the Clayton Act is broad. In addition to alleging the corporate relationships among BFI, IESI and the remaining Defendants, Plaintiffs point to the make up of the Winters Brothers board of directors, and statements of BFI and IESI indicating their activities in this district. Consideration of these allegations, together with the allegations of the Complaint leads the court to conclude that Plaintiffs have alleged facts showing that BFI and/or IESI have sufficient control over the other Defendants to support the argument that these Defendants have "transacted business" in this district within the meaning of the Clayton Act. In the event that discovery reveals otherwise, the court may revisit the exercise of personal jurisdiction. At this stage, however, the motion to dismiss for lack of personal jurisdiction must be denied.[2] The court turns now to consider the motion of all Defendants to dismiss for failure to state a claim.

II.     Standard for Motions to Dismiss Pursuant to Rule 12(b)(6)

In Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955 (2007), the Supreme Court rejected the "oft quoted" standard set forth in Conley v. Gibson, 355 U.S. 41, 78 (1957), that a complaint should not be dismissed, "unless it appears beyond doubt that the plaintiff can prove no set of

---

[2] The court recognizes that BFI and IESI have reserved their right to raise the argument that they lack the minimum contacts required by the Constitution to support jurisdiction under the Due Process Clause.

facts in support of his claim which would entitle him to relief." Id. at 45-46. The court discarded the "no set of facts" language in favor of the requirement that plaintiff plead enough facts "to state a claim of relief that is plausible on its face." Twombly., 127 S. Ct. at 1974.

The "plausibility" language used by the Supreme Court in Twombly has not been interpreted by the Second Circuit to require a "universal standard of heightened fact pleading," but to require a complaint to "amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." Iqbal v. Hasty, 490 F.3d 143, 158 (2d Cir.2007) (emphasis in original). Further, courts have noted that while heightened factual pleading is not the new order of the day, Twombly holds that a "formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above a speculative level, on the assumption that all allegations in the complaint are true (even if doubtful in fact)." Williams v. Berkshire Fin. Grp. Inc., 491 F. Supp.2d 320, 324 (E.D.N.Y. 2007), quoting, Twombly., 127 S. Ct. at 1959.

III. The Section 1 Antitrust Conspiracy Claim

    A. Stating a Conspiracy Claim

As a case dealing specifically with pleading an antitrust case, Twombly is particularly on point here. In Twombly, the Supreme Court focused on the pleading necessary to state a claim for a Sherman Act conspiracy. See Twombly, 127 S. Ct. at 1964. Focusing on the requirement that a plaintiff properly plead an illegal agreement, the Court held that the pleading of nothing more than parallel conduct among defendants is insufficient to state a claim for conspiracy. Twombly, 127 S. Ct. at 1964. Thus, the Court stated that "lawful parallel conduct" standing alone, "fails to bespeak agreement." Id. Instead, a Sherman Act plaintiff must plead facts to

show a preceding agreement, and not only conduct that might just as well have been independent self-interested action. Id.

In light of Twombly, it is clear that an assertion of parallel business conduct, no matter how detailed, falls short of the pleading required to state a claim when it is accompanied by nothing more than bare allegations of conspiracy and illegal agreement. See In re Elevator Antitrust Litigation, 502 F.3d 47, 50 (2d Cir. 2007). This applies to claims of a violation of Section 1 of the Sherman Act, as well as those alleged in violation of Section 2 of that act. See In re Elevator Antitrust Litig., 502 F.3d 47, 50 (2d Cir. 2007); In re Parcel Tanker Shipping Servs. Antitrust Litigation, 541 F. Supp.2d 487, 491 (D. Conn. 2008).

B.     Disposition of the Motion to Dismiss the Section 1 Conspiracy Claim

When the court measures the allegations of the complaint here in light of the requirements of Twombly, it becomes clear that the Complaint fails to state a claim of conspiracy. To be sure, Plaintiffs' complaint alleges many facts in support of a finding of parallel conduct. All Defendants are stated to have used the allegedly anti-competitive contracts in the course of their business operations. The common use of these contracts, even assuming their anti-competitive nature, however, is insufficient to support Plaintiffs' claims of conspiracy. Unlike the allegations describing the contracts forming the basis of Plaintiffs' antitrust complaint, the allegations of conspiracy are general in nature. Those allegations allude to nothing more than Defendants' participation in meetings, conversations and communications. Defendants are stated to have reached agreement during these meetings as to their anti-competitive practices. These allegations are nothing more than a recitation of the terms of agreement and conspiracy, and nothing more. Such allegations do not state facts sufficient to

"nudge [plaintiffs'] claims across the line from conceivable to plausible," Twombly, 127 S. Ct. at 1974, as required by the Supreme Court. Accordingly, the court must dismiss the Section 1 claim, which alleges only conspiracy, for failure to state a claim. See In re Elevator Antitrust Litig., 502 F.3d at 50-51 (affirming district court dismissal of conspiracy claim where plaintiffs set forth nothing more than general assertion of meetings to agree to anti-competitive conduct); accord In re Parcel Tanker, 541 F. Supp.2d at 492.

IV. Section 2 Monopolization Claim

A. Stating a Claim

Section 2 of the Sherman Act prohibits monopolization, attempted monopolization and conspiracy to monopolize. 15 U.S.C. § 2. To state a Section 2 claim of monopolization, Plaintiffs must allege: "(1) the possession of monopoly power in the relevant market and (2) the wilful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident." United States v. Grinnell, 384 U.S. 563, 570-71 (1966); see also Heerwagen v. Clear Channel Communication, 435 F.3d 219, 226 (2d Cir. 2006). A claim of attempted monopolization requires the pleading of facts showing that the defendant: (1) "engaged in predatory or anticompetitive conduct with (2) specific intent to monopolize and (3) a dangerous probability of achieving monopoly power." Spectrum Sports v. McQuillan, 506 U.S. 447, 456 (1933); In re Payment Card Interchange Fee and Merchant Antitrust Discount Antitrust Litigation, 562 F. Supp.2d 392, 398 (E.D.N.Y. 2008) (hereinafter "Payment Card Litigation"). A claim of conspiracy to monopolize must allege: (1) concerted action, (2) overt acts in furtherance of the conspiracy, and (3) specific intent to monopolize." Discover Fin. Servs., DFS, LLC v. Visa USA, Inc., 2008 WL 3884383 *9

15

(S.D.N.Y. 2008), quoting, <u>Electronics Communications Corp. v. Toshiba America Consumer Prods., Inc</u>, 129 F.3d 240, 246 (2d Cir. 1997).

Critical to the determination of whether a plaintiff states a Section 2 claim of monopolization, or an attempt to monopolize, is whether there is a proper pleading of monopoly power and relevant market. Monopoly power is defined as "the power to control prices or exclude competition." <u>United States v. E.I. du Pont de Nemours & Co.</u>, 351 U.S. 377, 391 (1956); <u>Tops Markets, Inc. v. Quality Markets, Inc.</u>, 142 F.3d 90, 97-98 (2d Cir. 1998). A company that can exert market power to set prices or exclude competition, without regard to outside market forces, has monopoly power. <u>Payment Card Litigation</u>, 562 F. Supp.2d at 399. Monopoly power can be pled directly by showing the power to set prices or exclude competition, or indirectly, by showing defendant's large percentage of market share. See <u>Tops Markets</u>, 142 F.3d at 98; <u>Discover Fin. Servs.</u>, 2008 WL 3884383 at *8. Neither factor is determinative. "Market share and monopoly power are not the same thing; the former is merely evidence of the latter." <u>Payment Card Litigation</u>, 562 F. Supp.2d at 400. Thus, absence of large market share in the relevant market does not require dismissal of a claim of monopolization or attempt to monopolize. See <u>Tops Markets</u>, 142 F.3d at 99 (market share evidence not conclusive on issue of monopoly power).

Relevant market refers to both a relevant product market and a relevant geographic market. <u>Heerwagen</u>, 435 F.3d at 227. Proper allegation of a relevant market requires the pleading of a market where there is "cross-elasticity" of demand. That is, goods or services within the described market are interchangeable, or substitutable by consumers. Items exist within the same relevant market if a price change in one item may move consumers to substitute

a different item from within that market. See generally, Payment Card Litigation, 562 F. Supp.2d at 399. A market's geographic scope is referred to as the "area of effective competition," that is, the areas in which the seller operates and where consumers can turn, as a practical matter, for supply of the relevant product." Heerwagen, 435 F.3d at 227, quoting, Tampa Elec. Co. v. Nashville Coal Co., 365 U.S. 320, 327 (1961). The fact specific nature of the relevant market inquiry makes courts reluctant to dismiss Section 2 claims for failure to properly plead a relevant market. Payment Card Litigation, 562 F. Supp.2d at 401.

B. Disposition of the Motion to Dismiss the Section 2 Claim

Plaintiffs characterize their Section 2 claims as attempted monopolization and conspiracy to monopolize.[3] For the reasons set forth above with respect to the insufficiency of the Section 1 conspiracy claim, the court dismisses the claim of conspiracy to monopolize. See Elevator Antitrust Litigation, 502 F.3d at 50. Plaintiffs have no more set forth facts to support a conspiracy claim in connection with Section 2, than they have in connection with Section 1. As Twombly's pleading requirements apply equally to Section 1 and Section 2 conspiracies, the court dismisses the Section 2 claim of conspiracy to monopolize. See In re Elevator Antitrust Litigation, 502 F.3d at 50. The court turns to consider the sufficiency of the Section 2 claim of attempted monopolization.

The court holds that Plaintiffs' characterizations of the relevant product and geographic market, i.e. the market for small containerized waste hauling and disposal services in Long

---

[3] Defendants characterize Plaintiffs' Section 2 claim as one of "conspiracy to attempt to monopolize." A fair reading of the complaint, as well as the papers submitted in opposition to the motion to dismiss make clear to the court that Plaintiffs' Section 2 claims are attempted monopolization and conspiracy to monopolize, and not "conspiracy to attempt to monopolize."

17

Island, New York are sufficient. The Complaint clearly defines this market. The facts alleged therein make a strong case for the required showing of cross-elasticity of demand in the market. Plaintiffs show that the particular service described is not substitutable for other, similar waste disposal services. The economies of the business described support the geographic range of the relevant market. For the foregoing reasons, the court declines to dismiss the Section 2 claim for failure to properly plead a relevant market.

As noted, a claim of attempted monopolization requires the pleading of predatory or anticompetitive conduct with a specific intent to monopolize, and a dangerous probability of achieving monopoly power. See Spectrum Sports, 506 U.S. at 456. Anti-competitive conduct, standing alone, is not sufficient. In addition, there must be proof that of a dangerous probability of monopolization. Id. at 459. To evaluate the issue of whether there is a "dangerous probability" of monopolization, the court considers defendant's economic power in the relevant market. Tops Markets., 142 F.3d at 100.

In support of the claim of attempted monopolization, Plaintiffs allege anti-competitive conduct in the form of the contractual provisions described above. These contracts are alleged to give Defendants the ability to exclude competition and set prices. As to the "dangerous probability" of achieving monopoly power, Defendants are alleged to control approximately 65% of the relevant market. Plaintiffs neither rely on market share, nor power to exclude competition alone. Instead, it is alleged that the large market share, along with the power conferred by the contractual provisions alleged, support a claim of attempted monopolization.

The court holds that Plaintiffs have set forth sufficient facts in support of their claim of attempted monopolization. The Second Circuit has recognized that a lesser degree of market

power is required to be shown to sustain a claim of attempted monopolization than a claim of completed monopolization. Tops Markets, 142 F.3d at 100. The market share alleged, along with the specific claims of anti-competitive conduct, are sufficient. Finally, as to the issue of specific intent, the court holds that a finding of valid business justification over one of specific intent to monopolize cannot fairly be made this early in this case. In sum, the court holds that the Complaint states a claim of attempted monopolization in violation of Section 2 of the Sherman Act.

## CONCLUSION

For the foregoing reasons, the court grants in part, and denies in part Defendants' motions to dismiss. All claims against IESI NY are dismissed for lack of personal jurisdiction. The motion to dismiss the claims against BFI and IESI for lack of personal jurisdiction is denied. The court grants the motion to dismiss Plaintiffs' claim pursuant to Section 1 of the Sherman Act. As to Section 2 of the Sherman Act, the court grants the motion to dismiss any claim of conspiracy, but denies the motion to dismiss the claim of attempted monopolization. The Clerk of the Court is directed to terminate the motions to dismiss.

SO ORDERED.

LEONARD D. WEXLER
UNITED STATES DISTRICT JUDGE

Dated: Central Islip, New York
February 4, 2009