UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
ALL STAR CARTS AND VEHICLES, INC.,
H.B. MILLWORK, INC. AND KUSSMAUL
ELECTRONICS COMPANY, INC.
On behalf of themselves and all others
similarly situated,

                      Plaintiffs,

                                                                               **ORDER**
                                                                                  CV 08-1816 (LDW) (AKT)

      - against -

BFI CANADA INCOME FUND, IESI, CORP.,
IESI NY, CORP., WINTERS BROS.
RECYCLING CORP., WINTERS BROS.
WASTE SYSTEMS, INC.,
WASTE MANAGEMENT, INC.,
WASTE MANAGEMENT OF NEW YORK, LLC,
ALLIED WASTE INDUSTRIES, INC.,
ALLIED WASTE OF LONG ISLAND, INC. and
ISLAND WASTE SERVICES, LTD,

                      Defendants.
-------------------------------------------------------------X

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

**I.    PRELIMINARY STATEMENT**

Currently pending before the Court is a motion to disqualify the law firm of Lewis Johs Avallone Aviles, LLP and one of its attorneys, James F. Murphy (collectively the "Lewis Johs Attorneys"), from representing Plaintiffs in this putative antitrust class action on the grounds of an alleged conflict of interest. The motion, filed by Defendants BFI Canada Income Fund, IESI Corporation, IESI NY Corporation,[1] Winters Bros. Recycling Corp. and Winters Bros. Waste Systems, Inc.'s (collectively "Defendants"), argues that by reason of their representation of a

---

[1]     All claims against IESI NY Corporation have been dismissed for lack of personal jurisdiction. *See* DE 55.

non-party witness Jet Sanitation Service Corp. ("Jet"), a competitor of Defendants, the Lewis Johs Attorneys have an impermissible conflict of interest mandating disqualification.

In reaching a decision on the instant motion, I have considered the applicable case law, the relevant rules of professional conduct, the parties' written submissions, including the declarations and memoranda of law and the contentions proffered by counsel at oral argument. After thorough review, for the reasons set forth below, Defendants' motion for disqualification is DENIED, without prejudice. The parties are, however, directed to complete all discovery with respect to non-party Jet on an expedited basis. At the conclusion of such discovery, I will entertain a renewed motion, in the event Defendants believe they have a good faith basis for such renewal.

## II. BACKGROUND

In May 2008, All Star Cars and Vehicles, H.B. Millwork, Inc. and Kussmaul Electronics Company, Inc. (the "Named Plaintiffs") brought this action on behalf of a proposed class of "[a]ll persons and entities . . . who contracted with and purchased directly from the Defendants at any time during the period of May 5, 2004 through the present for small containerized waste disposal services . . ." (Compl. ¶ 53). Plaintiffs alleged that Defendants violated the antitrust laws with respect to the small containerized front-load waste disposal market in Long Island through their use of contracts containing anti-competitive provisions. Plaintiffs asserted claims for conspiracy to restrain trade in violation of the Sherman Act, 15 U.S.C § 1, and willful attempt to monopolize in violation of the Sherman Act, 15 U.S.C. § 2. Defendants moved to dismiss all claims against them and on February 4, 2009, Judge Wexler dismissed Plaintiffs' claim pursuant to Section 1 of the Sherman Act. As to Section 2 of the

Sherman Act, Judge Wexler dismissed any claim of conspiracy and allowed Plaintiffs to move forward on the sole remaining claim of monopolization pursuant to Section 2 of the Sherman Act.

In the instant motion, Defendants assert that the Lewis Johs Attorneys, in addition to representing Plaintiffs, are regular counsel for Jet, one of Defendants' largest competitors on Long Island, and also represent Jet in a state court action commenced by one of the Defendants. Defendants' Memorandum of Law ("Defs.' Mem."), at 1. According to Defendants, this dual representation is a conflict of interest in violation of Canon 5 of the New York State Code of Professional Responsibility because the Lewis Johs Attorneys will be unable to provide undivided loyalty to each client. Defendants contend that there is a conflict because: (1) on behalf of the class, the Lewis Johs Attorneys will not aggressively pursue discovery from Jet relating to the size of the small containerized front-load waste disposal market; or (2) on Jet's behalf, the Lewis Johs Attorneys will fail to follow the evidence where it leads because of the possible implication of Jet as a participant in the monopolization of the small containerized front-load waste disposal market. Defendants further argue that the conflict cannot be waived since the Lewis Johs Attorneys seek to represent absent class members as well as the Named Plaintiffs.

The Lewis Johs Attorneys, in opposing the motion, argue that there is no basis under federal law that would necessitate disqualification. Lewis Johs Memorandum of Law ("Lewis Johs' Mem.") at 4. They maintain that, since there is no conflict between Defendants and Lewis Johs, case law does not support Defendants' contention that they should be disqualified, *id*. at 5-6, and because there is no adversity between the Plaintiffs and Jet, there is no risk of taint at the trial. *Id*. To further support their position that disqualification is unnecessary, the Lewis Johs

3

Attorneys have provided declarations from representatives of each of the Named Plaintiffs consenting to Lewis Johs' continued representation of the Class and waiving any conflict. *See* DE 74, 75 and 77. Non-party Jet also filed a declaration consenting to Lewis Johs' concurrent representation of Plaintiffs and Jet and waiving any conflict. *See* DE 76.

### III.  LEGAL STANDARD

A motion to disqualify is left to the sound discretion of the district court. *See Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 72 (2d Cir. 1990); *Applied Tech. Ltd. v. Watermaster of America, Inc.,* No. 07 CV 6620, 2009 WL 804127, at *4 (S.D.N.Y. Mar. 26. 2009); *Team Obsolete Ltd. v. A.H.R.M.A., Ltd.*, No. 01-1574, 2006 WL 2013471, at *4 (E.D.N.Y. July 18, 2006); *Human Elecs. v. Emerson Radio Corp.*, 375 F. Supp. 2d 102, 105 (S.D.N.Y. 2004). Notwithstanding a trial court's discretion, disqualification of counsel is a "drastic measure," requiring a careful balancing of competing interests. *See Reilly v. Computer Assoc. Long-Term Disability Plan*, 423 F. Supp. 2d 5, 8 (E.D.N.Y. 2006).

Historically, the Second Circuit has shown considerable reluctance to disqualify attorneys "despite misgivings about the attorney's conduct." *Bd. of Educ. v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir. 1979) (citing *W.T. Grant Co. v. Haines*, 531 F.2d 671 (2d Cir. 1976)); *Ceramco*, Inc. v. *Lee Pharm.*, 510 F.2d 268 (2d Cir. 1975)). Disqualification has an "immediate adverse effect on the client by separating [it] from counsel of [its] choice. . . ." *In re Methyl Tertiary Butyl Ether Products Liab. Litig.*, 438 F. Supp. 2d 305, 307 (S.D.N.Y. 2006) (quoting *Nyquist*, 590 F.2d at 1246). Courts must also be mindful that disqualification motions can often be "interposed for tactical reasons." *Nyquist,* 590 F.2d at 1246.

4

The paradigm for evaluating motions to disqualify in this Circuit is *Board of Education v. Nyquist*, 590 F.2d 1241 (2d Cir. 1979). In *Nyquist*, Judge Feinberg laid out the standard to be applied in considering such motions:

> Our reading of the cases in this circuit suggests that we have utilized the power of trial judges to disqualify counsel where necessary to preserve the integrity of the adversary process in actions before them. In other words, with rare exceptions disqualification has been ordered only in essentially two kinds of cases: (1) where an attorney's conflict of interest in violation of Canons 5 and 9 of the Code of Professional Responsibility undermines the court's confidence in the vigor of the attorney's representation of his client, or more commonly (2) where the attorney is at least potentially in a position to use privileged information concerning the other side through prior representation, for example, in violation of Canons 4 and 9, thus giving his present client an unfair advantage.

*Nyquist*, 590 F.2d at 1246 (internal citations omitted). Therefore, "unless an attorney's conduct tends to 'taint the underlying trial' by disturbing the balance of the presentations" in one of these two ways, "courts should be quite hesitant to disqualify an attorney." *Id.* (quoting *W. T. Grant Co. v. Haines*, 531 F.2d 671, 678 (2d Cir. 1976)). The circumstances here fall within the first category set forth in *Nyquist* - - Defendants contend that the Lewis Johs Attorneys have a conflict of interest arising from their dual representation of the Plaintiff Class and non-party Jet, undermining their ability to vigorously represent both clients. *See* Def. Mem at 5-13.

The New York State Rules of Professional Conduct, 22 N.Y.C. R.R. § 1200, which took effect on April 1, 2009, guide the conduct of attorneys arguing before this Court.[2] *See* E.D.N.Y.

---

[2] Defendants' motion is premised under Disciplinary Rule ("DR") 5-105 which is substantially similar to Rule 1.7 of the newly implemented New York Rules of Professional Conduct. For ease of reference, the Court will make reference to DR 5-105 since it is cited throughout the motion. However, the Court's analysis will be focused on Rule 1.7 since that is the current rule that is applicable to this motion. In addition, "[e]ven though the Canons have

5

Local Rule 1.3. In ruling on disqualification issues, this Court may look to decisions of the New York State courts as well as the state disciplinary rules and the American Bar Association's Code of Professional Responsibility and Model Rules of Professional Conduct for guidance. E.D.N.Y. Local Rule 1.5(b)(5); *Leslie Dick Worldwide, Ltd. v. Soros*, CV 08-7900, 2009 WL 2190207, at *5 (S.D.N.Y. July 22, 2009). However, "such rules merely provide general guidance and not every violation of a disciplinary rule will necessarily lead to disqualification." *Hempstead Video, Inc. v. Incorporated Village of Valley Stream*, 409 F.3d 127, 132 (2d Cir. 2005).

"When dealing with ethical principles . . . we cannot paint with broad strokes. The lines are fine and must be so marked . . . and the conclusion in a particular case can be reached only after ***painstaking analysis of the facts and precise application of precedent***." *Fund of Funds, Ltd. v. Arthur Andersen & Co.*, 567 F.2d 225, 227 (2d Cir. 1977) (quoting *United States v. Standard Oil Co.*, 136 F. Supp. 345, 367 (S.D.N.Y. 1955)) (emphasis supplied); *see also Papyrus Tech. Corp. v. N.Y. Stock Exch., Inc.*, 325 F. Supp. 2d 270, 276 (S.D.N.Y. 2004) (the "district court must consider the factual record underlying such a motion in detail to determine whether the party seeking disqualification has sustained the high standard of proof necessary to disqualify opposing counsel") (citing *Evans v. Artek Sys. Corp.*, 715 F.2d 788, 791 (2d Cir. 1983)). With these principles in mind, I now consider the factual record and legal theories underlying the Defendants' motions to disqualify Plaintiffs' counsel.

---

been replaced by the New York Rules of Professional Conduct, the new rules still incorporate much of the substance of the old rules (citation omitted)[,] [and] . . . much of the precedent interpreting the old rules still remains applicable.*" See Pierce & Weiss, LLP v. Subrogation Partners LLC,* No. 08-4676, 2010 WL 546060, at *6 (E.D.N.Y. Feb. 16, 2010) (citing *Merck Eprova AG v. ProThera, Inc.*, No. 08-035, 2009 WL 4067209, at *11, n. 1 (S.D.N.Y. Sept. 17, 2009)).

IV.   **DISCUSSION**

   A.   **Conflict of Interest**

Canon 5, which is substantially similar to the newly implemented Rule 1.7 of the New York Rules of Professional Conduct, directs lawyers to "exercise independent professional judgment on behalf of a client." N.Y. Jud. L., App., Canon 5 (McKinney 1992 & Supp.1998) ("N.Y.Code").[3] Developing this canon in the context of simultaneous representation of current clients, Disciplinary Rule 5-105 of the Code forbids a lawyer from representing a client if that representation will adversely affect the interests of another current client. *See* N.Y.Code DR 5-105(A)-(B). Thus, courts in this Circuit have held that a lawyer owes a duty of undivided loyalty to his client that precludes him from doing anything adverse to a client's interests. *See Cinema 5 Ltd. v. Cinerama, Inc.*, 528 F.2d 1384, 1386 (2d Cir.1976); *Flather v. United States*

---

[3]   Rule 1.7(a)of the New York Rules of Professional Conduct states that:
   [A] lawyer shall not represent a client if a reasonable lawyer would conclude that either: (1) the representation will involve the lawyer in representing differing interests; or (2) there is a significant risk that the lawyer's professional judgment on behalf of a client will be adversely affected by the lawyer's own financial, business, property or other personal interests.

N.Y. Rules of Prof. Conduct 1.7(a), 22 N.Y.C. R.R. § 1200. Rule 1.7(b), which pertains to concurrent conflict of interest where multiple clients are involved, provides that:
   [N]otwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if: (1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affect client; (2) the representation is not prohibited by law; (3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and (4) each affect gives informed consent, confirmed in writing.

N.Y. Rules of Prof. Conduct 1.7(b), 22 N.Y.C. R.R. § 1200.

7

*Trust Co. of New York*, No. 93 Civ. 7504, 1994 WL 376088, at *4 (S.D.N.Y. July 15, 1994). Therefore, " '[a]s a matter of professional responsibility, an attorney owes a duty of loyalty to his client . . . not to divulge confidential communications . . . and not to accept representation of a person whose interests are opposed to the client.' " *Ehrich v. Binghamton City Sch. Dist.*, 210 F.R.D. 17, 23 (N.D.N.Y. 2002) (quoting *In re Agent Orange Product Liability Litigation*, 800 F.2d 14, 17 (2d Cir. 1986)).

Second Circuit case law has interpreted these Code provisions as setting forth a *per se* rule of disqualification when an attorney is representing one client in a litigation against another current client. *See, e.g., Cinema 5*, 528 F.2d at 1386; *Commercial Union Ins. Co. v. Marco Int'l Corp.*, No. 98 Civ. 6424, 1999 WL 178774, at *2 (S.D.N.Y. Mar. 31, 1999); *Chemical Bank v. Affiliated FM Ins. Co.*, No. 87 Civ. 0150, 1994 WL 141951 (S.D.N.Y. Apr. 20, 1994). However, the case law is less clear when the conflict arises in the context of the simultaneous representation of a party and a non-party witness. The court in *Ritchie v. Gano,* No. 07 Civ. 7269, 2008 WL 4178152 (S.D.N.Y. Sept. 8, 2008) found this distinction critical. When faced with a motion to disqualify counsel on the basis of simultaneous representation of plaintiff and a non-party witness, the court in *Ritchie* did not order disqualification. However, the court was "reluctant to endorse a blanket rule which would preclude conflicts when an attorney represents both a party and a non-party in the same litigation" noting that "since there is no conflict [between the party and witness] I need not decide that issue at this time." *Id*. at *10.[4] The court

---

[4] In a footnote, the court in *Ritchie* provided a collection of cases in this Circuit where courts refused to disqualify the attorney because the third-party witness was not a party in pending case. *See Ritchie v. Gano,* No. 07 Civ. 7269, 2008 WL 4178152 (S.D.N.Y. Sept. 8, 2008) citing *Medical Diagnostic Imaging, PLLC v. CareCore Nat., LLC*, 542 F. Supp. 2d 296, 304 (S.D.N.Y. 2008) (in motion to intervene in order to move to disqualify counsel, fact that

denied the disqualification motion because the alleged conflict was "mere speculation" at that point in the litigation. *Id*.

The Second Circuit disfavors disqualification and therefore requires the party seeking disqualification to satisfy a "high standard of proof" in order to succeed. *Evans*, 715 F.2d at 791 (quoting *Government of India v. Cook Industries, Inc*, 569 F.2d 737, 739 (2d Cir. 1978)); *Occidental Hotels Mgmt. B.V. v. Westbrook Allegro L.L.C.*, 440 F. Supp. 2d 303, 308-09 (S.D.N.Y. 2006). "Mere speculation will not suffice." *Paretti v. Cavalier Label Co.*, 722 F. Supp. 985, 987 (S.D.N.Y. 1989). This is especially important because motions to disqualify are "often interposed for tactical reasons," and in the best of situations "inevitably cause delay." *Nyquist*, 590 F.2d at 1246.

---

"[m]ovants are not parties in any litigation connected to these actions ..., [w]hile not dispositive, ... is an important factor in considering the strength of Movants' motion"); *Bonner v. Guccione*, No. 94 Civ. 7735, 1997 WL 91070, at *2 (S.D.N.Y. Mar. 3, 1997) (holding that "plaintiff has been unable to cite any civil case holding it to be improper for an attorney to represent both a defendant and its non-party employees"); *Prisco v. New York*, 804 F. Supp. 518, 520 (S.D.N.Y. 1992) ("While plaintiffs have indeed identified a conflict, it involves non-parties to this action, and accordingly does not require disqualification of [counsel]."); *Gould Investors, L.P. v. General Insurance Co. of Trieste & Venice*, No. 89 Civ. 4794, 1992 WL 42164, at *2 (S.D.N.Y. Feb. 24, 1992) (denying motion to disqualify because alleged conflict "involv[ed] only the representation of a non-party witness at a deposition, where there is a possibility of a divergence of interests"); *United States v. Occidental Chemical Corp.*, 606 F. Supp. 1470, 1474 (W.D.N.Y. 1985); *Markowski v. Markowski*, 2001 N .Y. Slip Op. 40216, 2001 WL 1423133, at *5 (N.Y. Sup.Ct. Aug. 13, 2001) (no conflict where "[plaintiff's] attorneys may have to cross-examine a non-party witness called by [defendant] ... who the firm represented in the past" in an unrelated matter). *But see Cole Mechanical Corp. v. National Grange Mutual Insurance Co.*, No. 06 Civ. 2875, 2007 WL 2593000, at *4 (S.D.N.Y Sept. 7, 2007) (permitting intervention by a non-party seeking to disqualify plaintiff's attorneys); *Enzo BioChem, Inc. v. Applera Corp.*, 468 F. Supp. 2d 359, 360-61 (D.Conn. 2007) (involvement in separate, but closely related, case justified intervention for purposes of bringing motion to disqualify in case in which the movant was a non-party).

Whether or not an attorney faces a conflict between clients which requires disqualification has been examined many times in the context of representation of multiple Defendants in the same litigation. I find the analysis instructive here. "An attorney has an actual, as opposed to a potential, conflict of interest when, during the course of the representation, the attorney's and [the client's] interests diverge with respect to a material factual or legal issue or to a course of action." *United States v. Schwarz*, 283 F.3d 76, 91 (2d Cir. 2002) (quoting *Winkler v. Keane*, 7 F.3d 304, 307 (2d Cir. 1993)). In contrast, "[a] potential conflict of interest exists if the interests of the defendant may place the attorney under inconsistent duties at some time in the future." *United States v. Kliti*, 156 F.3d 150, 153 n. 3 (2d Cir.1998). The "possibility that future conflicts of interest may arise does not require" disqualification. *Drag Racing Technologies, Inc. as D.R.T., Inc. v. Universal City,* No. 02 Civ. 0958, 2003 WL 1948798, at *4 (S.D.N.Y. Apr. 24, 2003) (citing *Tartaglia v. City of New York*, No. 98 Civ. 5584, 1999 WL 151104, at *2 (S.D.N.Y. March 19, 1999))(allowing joint representation because "[a]s the litigation now stands, [the defendants] share an interest in challenging plaintiff's allegations"); *Softel, Inc. v. Dragon Medical and Scientific Communications Ltd.*, No. 87 Civ. 0167, 1995 WL 75490, at *4 (S.D.N.Y. Feb. 23, 1995).

Here, there is the possibility that the Lewis Johs Attorneys may face a conflict in trying to zealously protect the interests of the class *and* Jet. However, at the present time, such conflict has not been established. Defendants face a high burden in demonstrating this conflict and in light of the current facts known to the Court, Defendants have not satisfied that burden. Defendants have submitted an affidavit from attorney Daniel J. Buzzetta in support of the motion to disqualify. In that declaration, Attorney Buzzetta states that none of the documents produced

by Jet "reflect service agreements Jet actually entered into, financial data and revenues by customer derived by Jet in the Relevant Market, or tons of waste collected in the Relevant Market. They are not helpful whatsoever in determining Jet's market share." Buzzetta Reply Decl., ¶ 3. Yet, despite this claim, no motion to compel has been filed by Defendants in an effort to unearth this purportedly crucial information, nor have Defendants requested sanctions for wrongful failure to produce.

Additionally, I am troubled by the opposing affidavits submitted concerning Jet's use of contracts containing precisely the language challenged by the Plaintiff Class. The Lewis Johs Attorneys, on the one hand, have submitted a declaration from Fred Redavid, the General Manager of Jet, stating that "Jet's current contract has all of its contractual terms on the front of the document. There is no pre-printed term of service (i.e., the customer can fill in the length of the contract). Jet's contract contains no automatic renewal, right of first refusal, or any other evergreen provision." April 2, 2009 Declaration of Fred Redavid Waiving Conflict, DE 76, ¶ 5. And, the Lewis Johs Attorneys have repeatedly represented to the Court that "Jet, it is important to note, utilizes a very simple one-page contract that contains no evergreen provision whatsoever and is the polar opposite of the type of evergreen contract utilized by Defendants." Lewis Johs Mem. at 3, 6. On the other hand, in moving for disqualification, Defendants have submitted the declaration of Kevin Nolan, attaching a copy of a contract which appears to be a Jet service agreement, executed in September 2004 (during the class period) which *does* contain an evergreen clause. *See* April 9, 2009 Reply Declaration of Kevin Nolan, DE 80, Ex. 1. This issue needs to be resolved by the parties through discovery of Jet. The burden is on the party seeking

disqualification to establish the conflict. Defendants have not at this time sufficiently demonstrated that an actual conflict exists.

In support of their position that disqualification is appropriate, Defendants refer to ABA Formal Opinion 92-367 (the "ABA Opinion"), Lawyer Examining a Client as an Adverse Witness, or Conducting Third Party Discovery of the Client (Oct. 16, 1992). Defendants contend that the American Bar Association has addressed this situation and has concluded that

> conducting third party discovery of one client on behalf of another client, is likely (1) to pit the duty of loyalty to each client against the duty of loyalty to the other; (2) to risk breaching the duty of confidentiality to the client-witness; and (3) to present a tension between the lawyer's own pecuniary interest in continued employment by the client-witness and the lawyer's ability to effectively represent the litigation client.

Defs.' Mem. at 6. As discussed above, this ABA opinion is not binding on this Court, but is instructive. *See Hempstead Video, Inc.*, 409 F.3d at 132.

Defendants maintain that Lewis Johs' representation of Jet will be problematic during depositions because Lewis Johs may choose not to vigorously pursue Jet for answers so that they do not alienate Jet as a client. In support, Defendants cite *In re Cendant Corp. Sec. Litig.*, 124 F. Supp. 2d 235, 241-43 (D.N.J. 2000). In *In re Cendant*, Ernst & Young, LLP sought a declaratory judgment that its attorney, Theodore Wells, could continue to represent it, even though he had recently joined a firm that was representing co-defendant Cendant's former Deputy General Counsel and Executive Vice President, Amy Lipton, in the pending litigation. The court found that, since Ernst & Young had cross-claims against Cendant, and because Ms. Lipton would likely need to testify as a key witness with respect to possible violations of securities laws perpetrated by Cendant, Attorney Wells and his new firm could not represent both

12

Ernst & Young and Ms. Lipton. In addition, Ms. Lipton did not waive any conflict between herself and Ernst & Young and believed her testimony would be adverse to Ernst & Young. *In re Cendant*, 124 F. Supp.2d at 249-251. These facts are distinguishable from those presented here. At the present time, all parties represented by the Lewis Johs Attorneys believe there is no conflict of interest, and to the extent one may exist, they are willing to waive any objection they may have to such conflict. *See* DE 74-77. The non-party witness in the *Cendant* case was unwilling to waive any potential conflict because she was expected to testify against Ernst & Young in favor of her former employer, which had asserted claims against Ernst & Young.

Defendants argue that because Jet may have utilized contract provisions similar to those challenged by Plaintiffs, it is possible the proposed class may have claims against Jet as well as Defendants. At the present time, in light of the conflicting factual assertions regarding Jet's use of the contractual provisions in question, I cannot undertake the "painstaking analysis of the facts" as required by Second Circuit precedent. The purpose of the disqualification rule is to "preserve the integrity of the adversary process." *Evans v. Artek Systems Corp.*, 715 F.2d 788, 791 (2d Cir. 1983) (quoting *Nyquist*, 590 F.2d at 1246). Disqualification is warranted if there is "a significant risk of trial taint." *Glueck v. Jonathan Logan, Inc.*, 653 F.2d 746, 748 (2d Cir. 1981). Accordingly, I find that the alleged conflict is "speculation" at this point and thus insufficient grounds to disqualify the Lewis Johs Attorneys.

Because of the gravity of the charges leveled by Defendants, I believe it is appropriate to resolve this issue before this action proceeds to trial. Therefore, I am directing the parties to complete all discovery with respect to non-party Jet by June 21, 2010. All counsel are to work

cooperatively to accomplish this task. To the extent Defendants believe Jet has not complied with proper discovery requests, Defendants shall file a letter motion to compel no later than June 23, 2010. Plaintiffs will have until June 28, 2010 to file any opposition. If the motion is not made within that time frame, the right to make such a motion will be waived.

**Counsel for the parties are directed to appear for a conference with the Court on July 1, 2010 at 11:30 a.m.** By that date, the factual record with respect to non-party Jet will be complete and the parties will report those facts back to me in the context of whether a renewed motion for disqualification is warranted.

### B. Waiver

Defendants argue that neither the Named Plaintiffs nor Lewis Johs can waive the conflict on behalf of absent class members. Because I have found that the conflict of interest raised by Defendants is too speculative at this point in the litigation to require disqualification, I will not reach the issue of waiver of a conflict of interest in the purported class action. There is authority to support Defendants' position that in the class action context, a conflict of interest cannot be waived. *See Molina v. The Mallah Organization, Inc.,* 804 F. Supp. 504, 513 (S.D.N.Y. 1992); *Chateau de Ville Productions, Inc. v. Tams-Witmark Music Library, Inc*, 474 F. Supp. 223, 226 (S.D.N.Y. 1979); *see also Moreno v. Autozone, Inc.* , No. C05-04432, 2007 WL 4287517, at * 6 (N.D. Cal. Dec. 6, 2007); *Palumbo v. Tele-Communications, Inc*., 157 F.R.D. 129, 132-33 (D.D.C. 1994). In the event a renewed motion to disqualify is warranted at the conclusion of the discovery outlined above, the issue of waiver will be incorporated in that discussion.

## V. CONCLUSION

For the forgoing reasons, I am DENYING, without prejudice, Defendants' motion to disqualify attorney James F. Murphy and the law firm of, Lewis Johs Avallone Aviles, LLP at this time.

**SO ORDERED.**

Dated: Central Islip, New York
May 31, 2010

/s/ A. Kathleen Tomlinson
A. KATHLEEN TOMLINSON
U.S. Magistrate Judge