UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
ALL STAR CARTS AND VEHICLES,
INC., H.B. MILLWORK, INC., and
ELECTRONICS COMPANY, INC., on
behalf of themselves and all others similarly
situated,

                   Plaintiffs,

     -against-

BFI CANADA INCOME FUND, IESI
CORP., IESI NY CORP., WINTERS BROS.
RECYCLING CORP., WINTERS BROS
WASTE SYSTEMS, INC., WASTE
MANAGEMENT OF NEW YORK, LLC.
ALLIED WASTE INDUSTRIES, INC.,
ALLIED WASTE OF LONG ISLAND, INC.
and ISLAND WASTE SERVICES, LTD.

                   Defendants.
------------------------------------------------------------X

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y

★ JAN 27 2012 ★

LONG ISLAND OFFICE

MEMORANDUM AND ORDER

CV 08-1816

(Wexler, J.)

APPEARANCES:

    LEWIS JOHS AVALLONE AVILES, LLP
    BY: JAMES F. MURPHY, ESQ.
    Attorneys for Plaintiffs
    425 Broad Hollow Road, Suite 400
    Melville, New York 11747

    REESE RICHMAN LLP
    BY: MICHAEL R. REESE, ESQ.
        KIM E. RICHMAN, ESQ.
    Attorneys for Plaintiffs
    875 Avenue of the Americas, 18th Floor
    New York, New York 10001

1

GREENBERG TRAURIG, LLP
BY: JAMES I. SEROTA, ESQ.
RONALD LEFTON, ESQ.
DANIEL J. BUZZETTA, ESQ.
Attorneys for Defendants
200 Park Avenue
New York, New York 10166

WEXLER, District Judge:

This is an antitrust action stemming from Defendants' use of certain contracts in connection with the business of small containerized waste hauling services on Long Island. The complaint originally alleged a conspiracy to restrain trade and an attempt to monopolize in violation of Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1, 2. In a previous Memorandum and Order, this court dismissed Plaintiffs' Section 1 and 2 claims of conspiracy, but allowed Plaintiffs to proceed with a Section 2 claim of attempted monopolization. All Star Carts and Vehicles, Inc. v. BFI Canada Income Fund, 596 F. Supp.2d 630, 642 (E.D.N.Y. 2009).

Presently before the court are Defendants' motion to exclude the expert opinion of Plaintiffs' proffered expert, Dr. Barbara Stevens ("Dr. Stevens") and Plaintiffs' motion for class certification pursuant to Rule 23 of the Federal Rules of Civil Procedure.

## BACKGROUND

I. Facts Supporting Class Claims

A. The Parties, the Relevant Markets and the Alleged Class

The facts forming the basis of Plaintiffs' claims are set forth in greater detail in this court's decision on Defendants' motion to dismiss, and the court assumes familiarity therewith. The court states herein those facts relevant to disposition of the motion for class certification.

Plaintiffs allege an attempt to monopolize a stated relevant market for services in a stated

2

geographic area. The relevant market alleged is that for small containerized waste hauling and disposal services. That market encompasses the market for the lifting of small containers of waste for emptying into the storage section of a vehicle which then transports the waste to a disposal site. Such services are provided primarily to commercial customers that generate more waste than residences, but less than larger entities that would typically utilize "roll-off" containers which are transported to disposal sites, and returned to the customer. In contrast to roll off services, the market here provides the service of transporting waste from small containers that remain on the customers' premises. The relevant geographic market in which Defendants are alleged to operate is the Long Island, New York Area.

The class asserted by consists of all persons and entities that have contracted with, and purchased small containerized waste disposal services in the relevant market directly from defendants (the "Plaintiff Class"). The relevant time period alleged covers May 5, 2004, through the present.

B. The Alleged Anti-Competitive Contracts

At the core of Plaintiffs' complaint are certain contractual provisions binding customers who purchase disposal services from Defendants. These contractual provisions are known as "Evergreen" clauses, that include allegedly anti-competitive provisions such as automatically renewable terms of between three and ten years. These renewal provisions extend the contracts for same period of time as the original term, and require customers to give notice of termination at least ninety days prior to the end of a term. Also identified as anti-competitive are liquidated damages provisions, and those that require customers to give notice to Defendants of any offer by a different solid waste hauling company. These "right to compete" clauses require customers to

give Defendants a reasonable opportunity to respond to the competitor's offer.

Defendants' use of these clauses, in the context of their large market share and market power in the relevant market, is alleged to have had anti-competitive and exclusionary effects. These effects are described as significantly increasing barriers to entry facing new entrants to the relevant market, and barriers to expansion faced by competitors. Defendants' market power is alleged to be maintained and enhanced by their use and enforcement of these contracts.

II.  The Motions

As noted, before the court are Plaintiffs' motion for class certification and Defendants' motion to exclude the expert report of Dr. Stevens. Plaintiffs seeks class certification pursuant to Rules 23(b)(3) and 23(b)(2) of the Federal Rules of Civil Procedure. As to both subsections of Rule 23(b), Defendants argue that Plaintiffs cannot establish the Rule 23(a) threshold issue of commonality of class issues. Further, Defendants oppose the Rule 23(b)(3) certification motion on the ground that Plaintiffs cannot show predominance of class issues. The Rule 23(b)(2) motion is opposed on the ground that creation of an injunctive class is not warranted.

As to the motion to exclude the expert opinion of Dr. Stevens, Defendants, relying on the opinion of their proffered expert, Dr. James Lagenfeld, argue that Dr. Stevens' report (the "Stevens Report") must be rejected because Dr. Stevens fails to provide any reliable methodology to analyze causation, or to quantify the damages for any member of the proposed class.

A decision as to the admissibility of the Stevens Report bears directly and importantly on the motion for class certification. Exclusion of this report will make it difficult for Plaintiffs to show that a proper methodology exists to show the common proof required in support of their

4

claim that class issues predominate. In particular, the admissibility of the report impacts whether Plaintiffs will be able to show that a common formula can be used to compare actual prices paid with the prices that would have paid, but for the Defendants' anti-competitive activity.

After setting forth applicable legal standards the court will turn first to the merits of the expert opinion motion and then to the motion for class certification.

## DISCUSSION

I. Motion to Exclude Expert Opinion of Dr. Stevens

   A. Standards for Admissibility of Expert Testimony

The admissibility of an expert's opinion is governed by Rule 702 of the Federal Rules of Evidence. That rule provides that a witness qualified by "knowledge, skill, experience, training, or education" may testify in the form of an opinion if:

   (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

   (b) the testimony is based on sufficient facts or data;

   (c) the testimony is the product of reliable principles and methods; and

   (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

Rule 702 imposes two basic prerequisites for admitting expert testimony at trial. First, the expert must be qualified to testify as an expert. Second, the court determines whether the proffered testimony is both relevant and reliable. When applying Rule 702, this court performs a "gatekeeping" function to ensure that the requirements of the Rule are met. See Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 152 (1999); Daubert v. Merrell Dow Pharms., Inc., 509 U.S.

5

579, 597 (1993); United States v. Farhane, 634 F.3d 127, 158 (2d Cir. 2011).

B. <u>Disposition of the Motion to Exclude the Expert Opinion of Dr. Stevens</u>

At the outset the court holds that Dr. Stevens is qualified to offer an expert opinion. Dr. Stevens holds a Ph.D. in economics from the Massachusetts Institute of Technology and served on the faculty of Columbia University. Additionally, Dr. Stevens has studied the industry about which she opines and has conducted studies regarding anticompetitive conduct and its effects.

The court further holds that the remaining requirements of Rule 702 have been met. Dr. Stevens' opinions are based on sufficient data. She has set forth the principles and methods that she uses and has applied data according to those principles. While Defendants may take issue with Dr. Stevens' conclusions, as set forth in Defendants' expert report, the issues raised go to the weight to be afforded Dr. Stevens' conclusions and not to her methodology. The matters raised by Defendants will make for a vigorous cross-examination of Dr. Stevens. They do not, however, require a ruling that Dr. Stevens' opinions may not be offered. Accordingly, the motion to exclude the expert opinion of Dr. Stevens is denied.

II. <u>Motion For Class Certification</u>

A. <u>Class Certification: Legal Principles</u>

Motions for class certification are governed by Rule 23 of the Federal Rules of Civil Procedure. When determining a motion for class certification, the court determines first whether the party seeking certification has satisfied the four prerequisites of Rule 23(a) of the Federal Rules of Civil. Thus, the court decides whether:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a); see, e.g., Marisol A. v. Giuliani, 126 F.3d 372, 375 (2d Cir.1997); Ramos v. SimplexGrinnell LP, 796 F. Supp.2d 346, 353 (E.D.N.Y. 2011).

If the requirements of Rule 23(a) are met, the court then considers whether Rule 23(b) is also satisfied. Brown v. Kelly, 609 F.3d 467, 475 (2d Cir. 2010); Marisol A., 126 F.3d at 375-76. Plaintiffs here seek class certification pursuant to both Rule 23(b)(3) and Rule 23(b)(2). Rule 23(b)(3) provides for class certification if "the questions of law or fact common to the members of the class predominate" over individual issues and "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3). Rule 23(b)(2) governs class-wide injunctive relief. The rule provides that certification of an injunctive class is available where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

A motion for class certification should not become a mini-trial on the merits. See Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 177–78 (1974); Krueger v. New York Telephone Co., 163 F.R.D. 433, 438 (S.D.N.Y.1995). The issue is not whether the plaintiffs will ultimately prevail on the merits, but whether the requirements of Rule 23 have been met. In re Buspirone Patent Litigation, 210 F.R.D. 43, 56 (S.D.N.Y. 2002). The Second Circuit has "emphasized that Rule 23 should be 'given liberal rather than restrictive construction,' ... and 'it seems beyond peradventure that the Second Circuit's general preference is for granting rather than denying class

certification.'" Ramos, 796 F. Supp.2d at 353 (citation omitted).

While the court does not evaluate the Plaintiffs' case on the merits, it must, in view of the requirements set forth above, consider the elements of the Plaintiffs' claim when determining whether it is appropriate to certify the requested class. The court therefore reviews briefly the elements of Plaintiffs' claim.

A Section 2 claim of monopolization is proved by a showing of: "(1) the possession of monopoly power in the relevant market and (2) the wilful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident." United States v. Grinnell, 384 U.S. 563, 570-71 (1966); see also Heerwagen v. Clear Channel Communication, 435 F.3d 219, 226 (2d Cir. 2006). Where, as here, the claim is for attempted monopolization, plaintiff must prove that defendants: (1) "engaged in predatory or anticompetitive conduct with (2) specific intent to monopolize and (3) a dangerous probability of achieving monopoly power." Spectrum Sports v. McQuillan, 506 U.S. 447, 456 (1993); In re Payment Card Interchange Fee and Merchant Antitrust Discount Antitrust Litigation, 562 F. Supp.2d 392, 398 (E.D.N.Y. 2008) (hereinafter "Payment Card Litigation").

As the foregoing makes clear, issues critical to develop in a claim of attempted monopolization are those of monopoly power and relevant market. As to monopoly power, Plaintiffs must show "the power to control prices or exclude competition." United States v. E.I. du Pont de Nemours & Co., 351 U.S. 377, 391 (1956); Tops Markets, Inc. v. Quality Markets, Inc., 142 F.3d 90, 97-98 (2d Cir. 1998). A company that can exert market power to set prices or exclude competition, without regard to outside market forces, has monopoly power. Payment Card Litigation, 562 F. Supp.2d at 399. As set forth in this court's prior opinion, "[market share

and monopoly power are not the same thing; the former is merely evidence of the latter." Payment Card Litigation, 562 F. Supp.2d at 400.

Establishing the relevant market will require Plaintiffs to show both a relevant product market and a relevant geographic market. Heerwagen, 435 F.3d at 227. As to relevant market, Plaintiffs must show "cross-elasticity" of demand. That is, goods or services within the described market are interchangeable, or substitutable by consumers. Items exist within the same relevant market if a price change in one item may move consumers to substitute a different item from within that market. See generally Payment Card Litigation, 562 F. Supp.2d at 399. A market's geographic scope is referred to as the "area of effective competition," that is, the areas in which the seller operates and where consumers can turn, as a practical matter, for supply of the relevant product." Heerwagen, 435 F.3d at 227, quoting, Tampa Elec. Co. v. Nashville Coal Co., 365 U.S. 320, 327 (1961).

With the forgoing issues of proof in mind, the court turns to consider the pending motions. In view of the fact that Rule 23(a) must be satisfied first, the court considers whether Plaintiffs fulfill the requirements of that section before moving on to consider the requirements of Rule 23(b)(3) and/or Rule 23(b)(2).

B. Plaintiffs Satisfy Rule 23(a)

The court's review of the parties' submissions reveals that, of the four requirements set forth in Rule 23(a), Defendants take issue only with the Rule 23(a) commonality requirement. To show Rule 23(a) commonality, Plaintiffs must show that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Individual circumstances may differ, but it must be shown that the injuries asserted "derive from a unitary course of conduct." Ramos, 796 F.

Supp.2d at 354, quoting, Marisol A., 126 F.3d at 377; see also Shahriar v. Smith & Wollensky Restaurant Group, Inc., 659 F.3d 234, 253 (2d Cir. 2011) (commonality satisfied where "plaintiffs' grievances share a common question of law or of fact"), quoting, Marisol A., 126 F.3d at 376.

In the context of this claim of attempted monopolization, the court holds that Plaintiffs have shown Rule 23(a) commonality. Plaintiffs show common questions of law and fact that are critical to the claim of attempted monopolization. Such common questions to be adjudicated are whether Defendants have monopoly power in the relevant market and how such power was acquired or is maintained. See PepsiCo, Inc. v. Coca-Cola Co., 315 F.3d 101, 105 (2d Cir. 2002). As to relevant market, a common question to be adjudicated is the area of effective competition. The allegation of monopoly power will ultimately be proven by evidence of Defendant's ability to set prices or exclude competition. See Pepsico, 315 F.3d at 107; Payment Card Litigation, 562 F. Supp.2d at 398-99. Important to this determination is the issue of Defendants' market share. These critical issues are subject to common proof. In light of the foregoing the court holds that Plaintiffs have shown commonality under Rule 23(a). Accord In re Buspirone, 210 F.R.D. at 57; Jennings Oil Co. v. Mobil Oil Corp., 80 F.R.D. 124, 128 (S.D.N.Y. 1978) (issues of monopoly power and acquisition thereof "undoubtedly common" to all class members).

Having concluded that Rule 23(a) has been satisfied, the court considers whether Plaintiffs can satisfy one or both sub-sections of Rule 23(b).

C. Plaintiffs Satisfy Rule 23(b)(3)

As noted, Rule 23(b)(3) provides for class certification if "the questions of law or fact

10

common to the members of the class predominate" over individual issues and a class action is superior to other methods in adjudicating the controversy. Fed. R. Civ. P. 23(b).

Defendants' opposition to Rule 23(b)(3) certification argues that Plaintiffs cannot show predominance of class issues because they cannot show that class issues are susceptible to common sources of proof. Relying on their expert, Defendants argue that Plaintiffs' expert fails to show how the contracts at issue have impacted the relevant market. Defendants also argue that the contracts negotiated by potential class members differed greatly and that any injuries suffered are Plaintiff-specific, rendering individual issues predominant over those of the proposed class.

Predominance of class issues under Rule 23(b)(3) is a "stricter" concept than that of Rule 23(a) commonality. See Ramos, 796 F. Supp.2d at 359. Specifically, predominance is shown by establishing that issues subject to "generalized proof" predominate over those subject to individualized proof. In re Visa Check/MasterMoney Antitrust Litigation, 280 F.3d 124, 136 (2d Cir 2001); Cordes & Co. Financial Services, Inc. v. A.G. Edwards & Sons, Inc., 502 F.3d 91, 1007-08 (2d Cir. 2007). As noted above, Plaintiffs are not required to prove the merits of their claim. Nonetheless, the court must inquire into the merits to ensure that Plaintiffs have done more than merely assert predominance, they must show the viability of their methods of proof. See In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litigation, 256 F.R.D. 82, 85-86, 100 (D. Conn. 2009).

Upon review, the court holds that Plaintiffs have satisfied the Rule 23(b)(3) requirement that class issues predominate. As stated in the court's holding denying the motion to exclude the Stevens Report, Plaintiffs have proffered an expert who has come forward with a methodology that shows that common proof may be relied upon to prove common issues. Defendants'

11

arguments do not defeat the conclusion that common questions of law predominate, and that those issues may be proven in the way set forth by Plaintiffs' expert. While Defendants' position with respect to expert opinions may prevail at trial, their quarrels with Plaintiffs' expert do not render class certification inappropriate. The submission that is before the court in the context of this motion reflects only a difference in opinions; it does not require a holding that class issues are subordinate to those that are individual. For the foregoing reasons, the court grants the Plaintiffs' motion to certify the requested class pursuant to Rule 23(b)(3).[1]

D. Plaintiffs Satisfy Rule 23(b)(2)

Rule 23(b)(2) governs class actions seeking injunctive relief and provides for certification of a class "where broad, class-wide injunctive or declaratory relief is necessary to redress a group-wide injury." Robinson v. Metro-North Commuter R.R. Co., 267 F.3d 147, 162 (2d Cir. 2001). Where, as here, plaintiffs seek both injunctive relief and non-incidental monetary damages, the court determines whether Section 23(b)(2) certification is appropriate in light of "the relative importance of the remedies sought, given all of the facts and circumstances of the case." Id. at 164, quoting, Hoffman v. Honda of America Mfg., Inc., 191 F.R.D. 530, 536 (S.D. Ohio 1999). Section 23(b)(2) certification is appropriate if the court finds that the value to Plaintiffs of injunctive relief "is predominant even though compensatory or punitive damages are also claimed and (2) class treatment would be efficient and manageable, thereby achieving an

---

[1] The court rejects Defendants' request, submitted after this motion was under consideration, to submit additional deposition testimony in support of their position. Defendants seek to submit testimony that, according to Defendants, shows that the contracts at issue were not, in all cases, uniform. While such testimony may be relevant at trial, it does not compel a finding that the contracts at issue here were so different as to defeat the class action predominance issue.

appreciable measure of judicial economy." Robinson, 267 F.3d at 164 (citation omitted). Certification of an injunctive class is appropriate if: (1) even in the absence of a possible monetary recovery, reasonable plaintiffs would bring the suit to obtain the injunctive or declaratory relief sought; and (2) the injunctive or declaratory relief sought would be both reasonably necessary and appropriate were the plaintiffs to succeed on the merits. Id.

The injunctive relief sought would declare that the clauses at issue are anti-competitive and would prohibit their use. Such relief would apply equally to all class members. As required by Rule 23(b)(2), the court holds that reasonable class members would benefit from such relief and that, even in the absence of monetary relief, they would bring an action to obtain the injunctive relief sought. Indeed, such relief would be necessary to secure the value of prevailing in this matter. Accordingly, the court holds that certification of an injunctive class is appropriate here.

Defendants argue that where, as here, class members seek both monetary and injunctive relief, certification of a class pursuant to Rule 23(b)(2) is inappropriate. While this may be true, it is equally true that the court may certify a damages-seeking class under Rule 23(b)(3), and an injunction-seeking class under Rule 23(b)(2). That is precisely what the court has done. Accordingly, the court rejects Defendants' arguments against certification of an injunction class and holds, for the reasons set forth above, that certification of such a class is warranted. Accord Jermyn v. Best Buy Stores, L.P., 276 F.R.D. 167, 173-74 (S.D.N.Y. 2011).

## CONCLUSION

For the foregoing reasons, the court denies Defendants' motion to exclude the expert report of Dr. Stevens and grants Plaintiffs' motion for class action certification pursuant to Rules

13

23(b)(3) and 23(b)(2) of the Federal Rules of Civil Procedure. Counsel are advised that this court expects strict compliance with the Magistrate Judge's scheduling order in this matter to ensure that this case is soon trial ready. The Clerk of the Court is directed to terminate the motions appearing as docket entries numbers 207 and 213.

SO ORDERED.

s/L. D. Wexler
LEONARD D. WEXLER
UNITED STATES DISTRICT JUDGE

Dated: Central Islip, New York
January 27, 2012